UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WAYNE DEMARCO and LEESA DEMARCO, Individually as parent and legal guardians of Chayce DeMarco, a minor and Brayden DeMarco, a minor, and as Assigness of LEO H. DOIRE and VIRGINIA TRANSPORTATION CORP. Plaintiffs | Case No.: 1:06-cv-539 |
| vs. | ***Removed from Superior Court for the State of Rhode Island Providence County State Court P.C. No.:06-6103*** |
| TRAVELERS INSURANCE COMPANY, MICHAEL R. DELUCA, ESQ., and GIDLEY, SARLI & MARUSAK, LLP, Defendants. | |

**PLAINTIFFS' OBJECTION TO TRAVELERS INSURANCE COMPANY'S MOTION TO DISMISS**

Now come the Plaintiffs, in the above-entitled matter, and hereby object to Travelers Insurance Company's ("Travelers") Motion to Dismiss. In support of their Objection, Plaintiffs rely on the attached Memorandum of Law analyzing the various substantive reasons why Travelers' Motion to Dismiss should fail. Nevertheless, Plaintiffs contend that the Traveler's Motion to Dismiss is premature in nature because important issues concerning this Court's jurisdiction over the instant matter and the related case *Travelers Indemnity Co. v. Virginia Transportation Corporation,* Docket No. 06-cv-488-S ("related matter") remain unresolved. Prior to the filing of Travelers' Motion to Dismiss, Plaintiffs filed a Motion to Remand the within matter to Providence County Superior Court, which this Court has not yet ruled on. Also pending in the related matter is Plaintiffs'[1] Motion to Dismiss Travelers' Amended Complaint.

[1] For all practical purposes, Plaintiffs in the instant matter are also the named Defendants that have answered the related matter. To avoid confusion, the term "Plaintiffs" as used herein refers to the same parties even though they are actually the named Defendants in the related matter.

Plaintiffs contend that this Court should first rule on the Motion to Remand the within matter. If the Motion to Remand is granted, then this Court should next consider Plaintiffs' Motion to Dismiss the related matter in favor of the parallel state court proceeding. As such, it is not appropriate to rule on the underlying merits of Travelers' Motion to Dismiss until the jurisdictional questions are resolved.

Plaintiffs filing of a substantive Objection to Travelers' Motion to Dismiss in instant case is not intended to, nor should it be construed as, a waiver of the jurisdictional issues that Plaintiffs have raised but remain yet undecided.

Plaintiffs request an oral argument not to exceed (30) thirty minutes pursuant to LR Civ. 7 (e).

Plaintiffs,
By Their Attorneys:

***D'AMICO • BURCHFIELD, LLP***

/s/ Robert A. D'Amico, II, Esq.
/s/ Mark W. Dana, Esq.
Robert A. D'Amico, II, Esq. #4593
Mark W. Dana, Esq. #4150
536 Atwells Avenue
Providence, Rhode Island 02909
(401) 454-1212
(401) 454-1233 – fax

## ***CERTIFICATION***

I hereby certify that on this 28th day of December, 2006, a true copy of the within *Objection* was filed electronically, and is available for viewing and downloading from the ECF system, and copies were sent to all counsel of records via regular mail.

Anthony R. Zelle
ZELLE McDONOUGH, LLP
Four Longfellow Place, 35th Floor
Boston, MA 02114

Stephen P. Harten, Esq.
Ratcliffe Burke Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

/s/ Mark W. Dana, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| WAYNE DEMARCO and LEESA DEMARCO, Individually as parent and legal guardians of Chayce DeMarco, a minor and Brayden DeMarco, a minor, and as Assigness of LEO H. DOIRE and VIRGINIA TRANSPORTATION CORP. Plaintiffs | Case No.: 1:06-cv-539 |
| vs. | ***Removed from Superior Court for the State of Rhode Island Providence County State Court P.C. No.:06-6103*** |
| TRAVELERS INSURANCE COMPANY, MICHAEL R. DELUCA, ESQ., and GIDLEY, SARLI & MARUSAK, LLP, Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTION TO TRAVELERS INSURANCE COMPANY'S MOTION TO DISMISS**

***INTRODUCTION***

At the outset, Plaintiffs contend that the Travelers Indemnity Company's ("Travelers") Motion to Dismiss is premature in nature because important issues concerning this Court's jurisdiction over the instant matter and the related case *Travelers Indemnity Co. v. Virginia Transportation Corporation,* Docket No. 06-cv-488-S ("related matter") remain unresolved. Prior to the filing of Travelers' Motion to Dismiss, Plaintiffs filed a Motion to Remand the within matter to Providence County Superior Court, which this Court has not yet ruled on. Also pending in the related matter is Plaintiffs'[1] Motion to Dismiss Travelers' Amended Complaint. Plaintiffs contend that this Court should first rule on the pending motions affecting jurisdiction before entertaining the merits of

[1] For all practical purposes, Plaintiffs in the instant matter are also the named Defendants that have answered the related matter. To avoid confusion, the term "Plaintiffs" as used herein refers to the same parties even though they are actually the named Defendants in the related matter.

Travelers' Motion to Dismiss and Plaintiffs' Objection thereto, which seeks to address disputed issues of fact and important issues substantive law involving the merits of Plaintiffs' underlying claims.

Given the various pleadings containing the factual history that have been filed by the parties in this case and the related case, Plaintiffs, for sake of avoiding redundancy, incorporate by reference the recitation of the facts they have already set forth in their Motion and Memorandum in Support of a Dismissal or in the Alternative a Stay previously filed in the related matter. ("Motion and Memorandum in Support of a Dismissal") (Exhibit A, without attachments). The facts section of this memorandum shall contain only a brief recitation of facts necessary to clarify some of the specific issues raised in Travelers' Motion to Dismiss.

## *ADDITIONAL FACTS*

Travelers takes the position in its Motion to Dismiss that it initiated the post judgment mediation of November 17, 2006 "to protect Doire and Virginia from liability for the amount of the verdict in excess of the $1,000,000" policy limit. It is difficult to reconcile how this affirmative statement can be true when Travelers had already filed a declaratory judgment action in this Court against its own insureds prior to even scheduling a mediation. Travelers further states, that in exchange for the payment by Travelers in the amount of $550,000, the DeMarcos executed a release that ***Travelers*** obtained on behalf of Doire and Virginia[2]. The only portion of this statement that bears

[2] The references in the body of this Memorandum to "the DeMarcos" and "Doire" and "Virginia" (collectively "Virginia") relate to transactions between these parties in the personal injury litigation pending in Providence County Superior Court in the matter of *Wayne DeMarco et al v. Leo Doire and Virginia Transportation Company,* Providence County Superior Court, C.A. No. 04-1171 (the "DeMarco

any truth is that Travelers did indeed pay $550,000 of its policy limit to the DeMarcos. Dispelling these and other misstatement is important to understanding what truly transpired between the Plaintiffs and Defendants in the instant matter.

After the clerk entered judgment on the verdict in the DeMarco Litigation on September 22, 2006, DeMarcos' counsel and Virginia's private corporate counsel were virtually certain that Travelers would not pay any money above its One Million Dollar policy limit to satisfy the judgment. In the six weeks following the entry of judgment, counsel for the DeMarcos and Virginia carefully negotiated and ultimately executed a settlement agreement on November 17, 2006 that included a written assignment of all of Virginia's rights against Travelers and others to the DeMarcos in exchange for the release (collectively the "settlement documents") that Travelers now relies on to seek a dismissal of the claims against all parties to the instant litigation. These settlement documents were structured with the declared intent of the DeMarcos and Virginia to specifically preserve any and all claims that existed against Travelers and others. Settlement in this fashion was necessary, in large part, to permit the DeMarcos, as assignees of Virginia, to pursue various claims against Travelers for bad faith as well as claims to require Travelers to pay the judgment in excess of the policy limit, in the absence of bad faith pursuant to the *Asermely* rule promulgated by the Rhode Island Supreme Court in *Aserlemy v. Allstate Ins. Co.*, 728 A.2d, 461 (R.I. 1999). At no time during the negotiations did the DeMarcos or Virginia anticipate or believe that Travelers would pay any policy money to DeMarco and, on the contrary, they fully expected to execute the settlement documents and proceed against Travelers and others, as they have in the instant litigation, without the benefit of any payment from Travelers.

---

Litigation"), from the date that judgment entered on September 22, 2006 through November 17, 2006.

Travelers' statement that it was responsible for procuring the release executed by the DeMarcos is patently false. The fact that Travelers did pay $550,000 to the DeMarcos does not breathe truth into this falsity. The only way that Virgina could avoid bankruptcy and the potential for personal and corporate financial ruin was to enter into the settlement agreement with the DeMarcos and to execute the settlement documents. Anthony Zelle ("Zelle"), counsel for Travelers, was not in any way a part of the lengthy settlement negotiations or the drafting or execution of the settlement documents. Indeed, Zelle specifically advised Virginia's private corporate counsel that if Virginia could settle with the DeMarcos by executing an assignment that it should do so.

Moreover, Zelle was present in the offices of Virginia's corporate counsel on November 17, 2006 following the mediation when the settlement documents were executed. Incredibly, Zelle attempted to have the DeMarcos execute a comprehensive four page general release that would have accomplished exactly what Travelers is arguing in its Motion to Dismiss, a full and unconditional release of all claims against Travelers. (Exhibit B). DeMarco's counsel advised Zelle in no uncertain terms that his general release would not be used and that the only change to the release between the DeMarcos and Virginia would be to add language acknowledging that Travelers had paid $550,000 of its policy limit to the DeMarcos. Nevertheless, Travelers cites to the executed release between the DeMarcos and Virginia in support of its motion to dismiss and does so completely out of context. The paragraph that Travelers excludes from its direct quotation specifically speaks to the declared intent of the parties to the release:

> This General Release shall not in any way be construed, nor is it intended, to release Travelers Insurance Company of America, Travelers Indemnity Company, Travelers St. Paul, Travelers Insurance Company, or any of its affiliates (collectively, "Travelers"), from any and all claims that Releasors

> may have against Travelers in any way arising from the Litigation or any aspect thereof. The same are specifically reserved by Releasors.

Travelers suggests that the DeMarcos accepted $550,000 from Travelers in settlement of their multi-million dollar judgment and executed a general release that released the claims that the parties otherwise specifically intended to reserve. Travelers' assertion is both a factual and legal falsity. Travelers was never part of the negotiations between Virginia and the DeMarcos nor was Travelers ever released from any potential claims against it. Travelers, on it's own volition, committed to make a gratuitous payment of the remaining policy limit of $550,000 to the DeMarcos without receiving any release for itself from the DeMarcos or from Virginia. Nevertheless, Travelers was fully aware that Virginia would be executing an assignment of its rights to the DeMarcos as part of the settlement agreement.

The DeMarcos and their counsel have, from November 17, 2006 to the present, steadfastly maintained that Travelers' payment of $550,000 was a gratuitous partial payment to be applied against the Plaintiffs' future *Asermely* claims. (Exhibit C, December 1, 2006 letter to Travelers adjuster, Caren Gatinella). The only reason that the payment of $550,000 was advanced to the DeMarcos was so that Travelers could exhaust its policy limit and proceed to pursue its declaratory judgment action in the related matter. Paragraphs 41, 42, 43 and 46(C) of Travelers' amended complaint in the declaratory judgment action further bears out the truth of Travelers' motivation in this regard. Collectively, these paragraphs specifically allege that Travelers exhausted its One Million Dollar policy limit and, therefore, is not required or otherwise legally obligated to pay any sums in excess thereof.

Before Plaintiffs address herein the legal arguments in opposition to the Motion to Dismiss, it is important to dispel one additional falsity in Travelers' perspective on facts of this case as it relates to the timing of events when Travelers filed its original complaint in the related matter and the filing of Plaintiffs' complaint in Providence County Superior Court in the instant matter. In its recitation of the facts, Travelers states that "more than two weeks before the DeMarco complaint was filed, Travelers filed a declaratory judgment action" in this Court, ostensibly to support its argument that Travelers was the first party to file a lawsuit. It is disturbing, however, that in this timeline of events, Travelers fails to acknowledge that it had surreptitiously filed the original complaint in this Court in the related matter on November 7, 2006, before the issues raised and the relief sought therein were ripe for determination. Further, neither Zelle nor local counsel notified any of the Defendants of the federal court filing, rather, Zelle continued to press for mediation with all parties under the guise of good faith. At no time was there even an attempt to serve the original complaint upon the parties.

In its Motion to Dismiss, Travelers insinuates that Plaintiffs' counsel, D'Amico • Burchfield, LLP received a "courtesy" copy of the federal court filings on November 21, 2006 and that with knowledge of the pending litigation in this Court, went ahead and filed the complaint in the instant matter in Providence County Superior Court. The true timeline of these events, however, shows that Travelers' local counsel ***mailed*** the "courtesy" copy on November 21, 2006 and it was received by D'Amico • Burchfield, LLP on November 22, 2006, after Plaintiffs' complaint had already been filed.

## *STANDARD OF REVIEW*

Travelers' Motion to Dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) and, pursuant thereto, this Court must determine whether Plaintiffs' complaint states any claim upon which relief may be granted. *See Fed. R. Civ. P. 12(b)(6).* In passing on a motion to dismiss, the court must accept all well pleaded factual assertions as true while drawing all reasonable inferences from the factual assertions in Plaintiffs' favor. *Aybar v. Crispin-Reyes,* 118 F.3d 10, 13 (1st Cir. 1997). The Plaintiffs are "required to set forth factual allegations, ***either direct or inferential,*** respecting each material element necessary to sustain recover under some actionable legal theory. *The Standard Fire Ins. Co., v. Gordon,* 376 F. Supp. 2d 218, 220 (D.R.I. 2005) ("*Standard Fire")(Quoting Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir. 1988) (emphasis added).

## *ARGUMENT AND LEGAL ANALYSIS*

### 1. Travelers argument that Plaintiffs' Complaint must be dismissed for failure to establish the existence of a written assignment is inaccurate and wholly without merit.

In its Motion to Dismiss, Travelers contends that the complaint in this matter should be dismissed because the Plaintiffs have failed to establish the existence of a written assignment from Virginia to the DeMarcos. Travelers relies on R.I. Gen. Laws § 9-2-8, which provides as follows:

> **Assignee of nonnegotiable chose in action** - The assignee of a nonnegotiable chose in action which has been assigned in writing may maintain an action thereon in his or her own name, but subject to all defenses and rights of counterclaim, recoupment, or setoff to which the defendant would have been entitled had the action been brought in the name of the assignor.

Travelers takes the position that Plaintiffs have failed to establish the existence of a valid written assignment on the face of their complaint and, as a result, the complaint must be dismissed. Travelers' argument rests solely on Plaintiffs' use of one word embodied within the complaint. Travelers argues that the complaint states that "Virginia ***would*** assign all of it's rights to DeMarco in exchange for a General Release releasing only those claims against Virginia…". Travelers cites to the word "would" completely out of context to advance an argument that no assignment was executed and ignores further language in paragraphs 41 and 46 of the complaint, which specifically provide:

> Corporate Counsel and counsel for DeMarco ***entered*** into negotiations to settle the DeMarco verdict/judgment by Virginia ***executing*** an assignment under which Virginia would assign all of its rights to DeMarco in exchange for a general release releasing only those claims against Virginia and specifically reserving any and all claims that existed against Travelers. (Plaintiffs' Complaint, Paragraph 41) (Emphasis added).
>
> DeMarco negotiated a resolution with Virginia and its corporate counsel that in ***exchange for an assignment*** of all of Virginia's rights against Travelers, DeMarco would execute a release in favor of Virginia in order that Virginia could avoid having to file bankruptcy. Travelers committed to make a gratuitous payment of the remaining policy limit of $550,000 to DeMarco without receiving any release for itself from DeMarco or from Virginia. (Plaintiffs' Complaint, Paragraph 46) (Emphasis added).

The complaint clearly, and without question, asserts that an assignment in fact took place. It does so in the case caption where the Plaintiffs identify themselves as "assignees" of Leo H. Doire and Virginia Transportation Corp. And it further establishes the existence of an executed written assignment in Paragraphs 41 and 46.

Despite the unquestionable existence of a written assignment, Travelers cites to R.I. Gen. Laws § 9-2-8, as well as *Weybosset Hill Investments, Inc. v. Rossi,* 857 A.2d 231, 241 (R.I. 2004) ("*Weybosset Hill*"), *Lombardi v. Electromet Co.,* 540 A.2d 16, 17

(R.I. 1988), *United Master Plumbers Ass'n of RI v. Bookbinder Plumbing & Heating Co. Inc.,* 210 A.2d 573, 576 (R.I. 1965) ("*United Master Plumbers*") and *Plotkin v. Danakos,* 41 A.2d 470, 472 (R.I. 1945) to support its contention that "the making of a valid written assignment must be established ***before*** an assignee will be permitted to sue in the assignee's own name". (Emphasis added).

First, R.I. Gen. Laws § 9-2-8, on its face, does not require that an assignee specifically allege it its complaint that it has a written assignment in its possession, or attach a copy of the assignment as an exhibit to the complaint, simply to substantiate the basis for bringing suit on the assignor's claims in the name of the assignee. The statute speaks only to the fact that the assignment must be in writing. Further, the cases Travelers cites in support of its contention to the contrary clearly do not represent the state of the law on this issue. Indeed, in *Weybosset Hill,* the issue before the Rhode Island Supreme Court was whether an assignment of the right to pursue a tax appeal was enforceable under the general language of R.I. Gen. Laws § 9-2-8. *Weybosset Hill,* 857 A.2d at 241. The court's analysis on this issue focused only the legal assignability of a particular type of chose in action and in no way considered or otherwise concluded that a plaintiff must establish conclusive proof of a written assignment on the face of its complaint to justify the filing of a lawsuit. *See Id.* at 241.

Similarly, in *Lombardi* and in *United Master Plumbers,* the Rhode Island Supreme Court simply affirmed the general requirement under R.I. Gen. Laws § 9-2-8 that an assignment of a chose in action must be in writing. *See Lombardi,* 540 A.2d at 17; *United Master Plumbers* 210 A.2d at 576. Indeed the validity of the assignment in both of these cases was addressed by the Rhode Island Supreme Court on appeal after the trial

court had specifically considered evidence as to whether a valid written assignment existed between the parties as contemplated under R.I. Gen. Laws § 9-2-8. *Id; United Master Plumbers* at 576. The sufficiency by which the plaintiffs plead the existence of an assignment in their original complaints simply was never an issue considered by the Rhode Island Supreme Court.

Despite Travelers tortured reading of Plaintiffs' complaint, R.I. Gen. Laws § 9-2-8 and the cases it cites in its Motion to Dismiss, there is no legal authority to support the proposition that Plaintiffs' complaint must be dismissed because, according to Travelers, it fails to establish the existence of a written assignment on its face or because it excludes a copy of the assignment itself as an attachment. There is no question that there was a valid written assignment at the time Plaintiffs' complaint was filed and it is a distortion of the facts and the law to suggest that the complaint should be dismissed as Travelers has argued.

Moreover, Superior Court Rule of Civil Procedure 8(a) and Federal Rule of Civil Procedure 8(a) both require "a short and plain statement of the claim showing that the pleader is entitled to relief". *See Sup. Ct. R. Civ. P.* 8(a); *Fed. R. Civ. P.* 8 (a). Both the Rhode Island Superior Court Rules of Civil Procedure and the Federal Court Rules of Civil Procedure[3] follow the notice pleading protocol under which the plaintiff is not specifically required to plead the ultimate facts that must be proven to succeed on its complaint. *Haley v. Town of Lincoln*, 611 A.2d, 847, 848 (R.I. 1992); *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,* 132 F.3d 526, 529 (9th Cir.1997) All that is required of a plaintiff is that the complaint provide the opposing party fair and adequate notice of

[3] Plaintiffs are referring to both the Rhode Island Superior Court Rules of Civil Procedure and the Federal Court Rules of Civil procedure because the complaint in this case was originally file in Providence County Superior Court and then putatively removed to this Court by the Travelers.

the claims asserted. *Id; In re Commonwealth Inst'l Secs., Inc.,* 394 F.3d 401, 405-06 (6th Cir.2005).

Plaintiffs' detailed factual complaint goes well beyond the requirements of Superior Court Rule of Civil Procedure 8(a) and Federal Rule of Civil Procedure 8(a) requiring fair and adequate notice to Travelers that the Plaintiffs in this case are pursuing claims against Travelers both in their individual capacity and as assignees of Virginia. Travelers has no legal basis to request that this Court dismiss Plaintiffs' complaint on the grounds that the same is deficient in failing to ***prove*** the conclusive existence of a written assignment at the time of filing. Travelers position on this issue is specious, at best, and its Motion to Dismiss should be denied.

**2. Travelers' argument that the DeMarcos' release left nothing to be assigned is legally and factually without merit.**

Travelers' next legal argument in support of its Motion to Dismiss focuses on the general release executed by the DeMarcos as part of the settlement documents entered into with Virginia. Travelers takes the position that the general release, despite having specifically reserved any and all claims against Travelers, eliminated any personal exposure that Virginia would have in excess of the judgment entered in Providence County Superior Court on September 22, 2006. Travelers contends that because "both Doire and Virginia have been released from any liability they may have had to the DeMarcos based on the verdict, they have sustained no damages" and, therefore, the assignment is a nullity.

Travelers cites several cases interpreting Oregon and Florida law in support of its position in this regard, however, Plaintiffs contend that Travelers has ignored the rule of

law adopted by a majority of jurisdictions on this exact issue and has disingenuously advanced the minority rule as that which should govern the outcome of this case.

There exists a plethora of authority from other jurisdictions that acknowledges and approves the exact type of settlement that the DeMarcos and Virginia entered into in the instant matter. In *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F. 2d 1128, 1131 (1989), the United States Court of Appeals for the District of Columbia discussed the applicability of the so called "judgment rule" as the majority view throughout the United States. The judgment rule provides that "an entry of judgment in excess [of policy limits] alone is sufficient damage to sustain a recovery from an insurer for its breach of duty". *Id. (Quoting Carter v. Pioneer Mut. Casualty Co.,* 423 N.E.2d 188, 190 (Ohio 1981)).

In *Gray,* the plaintiff's attorney had secured a default judgment against a defendant in a personal injury action in the amount of $344,000. *Id.* at 1129. Shortly thereafter, the defendant in the underlying personal injury action assigned his claims against the insurance company to Gray in exchange for a release that relieved the defendant of any obligation to pay the judgment. *Id.* Gray thereafter sued the insurance carrier in his capacity as an assignee of the defendant.

The insurance company filed a motion for summary judgment arguing that it had no obligation to pay the judgment to Gray as an assignee because the release had released the underlying defendant of any and all liability. *Id.* This is the exact same argument that Travelers is advancing in the instant matter.

The court in *Gray* specifically rejected this argument and concluded that there was no valid reason not to give the assignment and release "full effect to its terms." *Id.* at 1133. The *Gray* court went to state:

> After all, if the release ..... extinguished the claim ...... against the insurance company simultaneously with the assignment of the claim, that would also be true of that part of the claim [the assignor] had against the insurance company within the policy limits...... Appellant's argument reduces to an absurd conclusion: if the insured were to have paid the judgment in full and obtained a release from the injured party, he would have no right to proceed against the insurer for indemnification. *Id.*

Relying primarily on the *Gray* decision, The Massachusetts Supreme Judicial Court also adopted the judgment rule and recognized it as the majority view in the matter of *Campione v. Wilson,* 661 N.E.2d 658 (Mass. 1996). In *Campione*, the parties in the underlying action never tried their case to a jury verdict upon which judgment entered, rather they stipulated to a judgment prior to a trial and entered into a settlement agreement providing for an assignment and releases. *Id.* at 660. The settlement agreement specifically provided for entry of judgment in favor of the plaintiffs in the underlying action in the amount of $1,750,000. *Id.* at 661. The court was asked on appeal to dismiss the assigned claims based on the release. *Id.*

After analyzing the case law from different jurisdictions, The *Campione* court noted that although there may exist a split in authority across the country,

> the majority rule, however, is that ...entry of judgment in excess of the policy limits coupled with a release... in favor of the insured ***does not*** invalidate an accompanying assignment of the right to sue the insurer.

*Id.* at 662 (emphasis added). The *Campione* court further concluded that it was reluctant to foreclose the possibility of settlement like the one entered into in the underlying action. *Id.* There is a strong public policy to promote settlements where the assignor receives the benefit of being free from personal liability for amounts beyond its insurance policy limits in exchange for cooperation in assisting the assignee in their efforts to assert the assigned claims against the insurance company. *Id. at 663*. The court concluded that it

was entirely appropriate to give full effect to the agreements:

> which have led to a carefully negotiated and detailed settlement, in which the plaintiffs have voluntarily assumed the burden of proving any claims that [the assignor] might have against the [insurance carrier], in a situation where [the assignor's] liability for the accident is reasonably clear, the primary insurer has paid the full limits of its policy, and damages are substantial.

*Id.*

While the Rhode Island Supreme Court has not explicitly adopted the majority view espoused by both *Gray* and *Campione*, it did so implicitly in the *Asermely* case when it promulgated a new rule to guide the trial courts in dealing with cases where there is a judgment in excess of a defendant's policy limit. *Asermely v. Allstate Ins. Co.*, 728 A.2d 461 (R.I. 1999). Like the instant matter, the Plaintiff in *Asermely* had obtained a judgment against the Allstate insured for an amount in excess of the policy limit. *Id.* at 462. The Allstate insureds then assigned all of their rights to the *Asermely* plaintiff, who pursued the assigned claims directly against Allstate. *Id.* at 463. Although the court found that there was no bad faith on the part of Allstate as a matter of law, it took the opportunity to promulgate a new rule to guide the Rhode Island trial courts as follows:

> It is not sufficient that the insurance company act in good faith. An insurance company's fiduciary obligations include a duty to consider seriously a plaintiff's reasonable offer to settle within the policy limits. Accordingly, if it has been afforded reasonable notice and if a plaintiff has made a reasonable written offer to a defendant's insurer to settle within the policy limits, the insurer is obligated to seriously consider such an offer. If the insurer declines to settle the case within the policy limits, it does so at its peril in the event that a trial results in a judgment that exceeds the policy limits, including interest. If such a judgment is sustained on appeal or is unappealed, the insurer is liable for the amount that exceeds the policy limits, unless it can show that the insured was unwilling to accept the offer of settlement. The insurer's duty is a fiduciary obligation to act in the best interests of the insured. Even if the insurer believes in good faith

> that it has a legitimate defense against the third party, it must assume the risk of miscalculation if the ultimate judgment should exceed the policy limits.

*Id.* at 464. This fiduciary obligation extends not only to the insurance company's own insured, but also, as in this case, ***to a party to whom the insureds have assigned their rights***. *Id.* (Emphasis added). While *Asermely* is silent on whether the Allstate insured had received an executed release in exchange for the assignment, there can be no mistake as to the strong public policy behind the Rhode Island Supreme Court's decision to, *sua sponte*, promulgate a new landmark rule in this state.

The strong public policy concerns at issue in *Gray* and *Campione* are identical to those at issue here as well as those espoused by the Rhode Island Supreme Court in *Asermely.* The DeMarcos and Virginia, after the clerk entered judgment on the verdict on September 22, 2006, proceeded to carefully negotiate and ultimately execute a settlement agreement that assigned all of Virginia's rights against Travelers and others to Plaintiffs in exchange for the general release that Travelers now cites in support of its Motion to Dismiss. The settlement agreement specifically required that judgment on the verdict enter and that the same would be deemed satisfied as to the Defendants only by virtue of the assignment.

The parties in this case structured the settlement documents so that they would specifically preserve any and all claims that might exist against Travelers and others, including claims against Virginia's appointed counsel, Michael R. DeLuca and the law firm of Gidley, Sarli & Marusak, LLP. This settlement was the only way that Virginia could avoid personal and corporate financial ruin and, at the same time, allow the DeMarcos to take their chances in pursuing all claims against Travelers as alleged in the

complaint.

Where the DeMarcos and Virginia have entered into a settlement agreement similar in most respects to those at issue in *Gray* and *Campanione,* this Court should honor the intention of the parties to that settlement agreement and deny Travelers' Motion to Dismiss.

**3. Travelers' argument that Rhode Island does not recognize a cause of action for third party bad faith is inapplicable because Plaintiffs' complaint does not allege a claim for third party bad faith.**

Travelers' Motion to Dismiss alleges that Count V of Plaintiffs complaint should be dismissed because Rhode Island law does not recognize the legal right of a third party to pursue a claim a bad faith against an insurer. While Plaintiffs agree that Rhode Island law does not recognize the legal right of a third party to pursue a claim against an insurer for bad faith, paragraph 59 of the complaint is not seeking a bad faith remedy against Travelers. Under *Asermely,* 728 A.2d 461, the Rhode Island Supreme Court held that an insurer could be required to pay a judgment above its policy limits in the absence of bad faith. *Id.* at 464. Although *Asermely* is silent on the issue of whether this right would also extend to a third party plaintiff, it is conceivable that the Rhode Island Supreme Court could recognize such a claim on the facts of this case and, therefore, Travelers' Motion to Dismiss Count V of the complaint should be denied.

**4. Travelers' argument that Plaintiffs' complaint should be dismissed in favor of the related matter pending in this Court involving the same issues and the same parties should be denied.**

In addition to the substantive issues that Travelers has raised in its Motion to Dismiss, it has also advanced an alternative argument that Plaintiffs' complaint be dismissed in favor of the related matter already pending in this Court. Travelers cites to *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976) ("*Colorado River*") as providing the legal standard that this Court should apply in determining whether the instant matter should be dismissed in favor of the related matter. To the extent that Travelers relies on *Colorado River*, however, it fails to state the correct legal standard by which this Court should determine whether to dismiss the Plaintiffs' complaint in favor of the related matter. *See Standard Fire*, 376 F. Supp. at 223. "While *Colorado River's* "exceptional circumstances" test has previously been applied to declaratory judgment actions, its application in no longer appropriate in this context". *Id.*

On December 14, 2006, Plaintiffs filed in the related matter a Motion and Memorandum in Support of a Dismissal (Exhibit A, without attachments), setting forth a comprehensive analysis applying the appropriate legal standard outlined in *Standard Fire* to the particular facts of this case. For sake of avoiding redundancy, Plaintiffs incorporate by reference herein the legal analysis contained in their Motion and Memorandum in Support of a Dismissal and rely thereon to support their position that Travelers' Motion to Dismiss the instant case in favor of the related matter should be denied.

Plaintiffs,
By Their Attorneys:

***D'AMICO • BURCHFIELD, LLP***

/s/ Robert A. D'Amico, II, Esq.
/s/ Mark W. Dana, Esq.
Robert A. D'Amico II, Esq. #4593
Mark W. Dana, Esq. #4150
536 Atwells Avenue
Providence, Rhode Island 02909
(401) 454-1212
(401) 454-1233 – fax

***CERTIFICATION***

I hereby certify that on this 28th day of December, 2006, a true copy of the within *Memo* was filed electronically, and is available for viewing and downloading from the ECF system, and copies were sent to all counsel of record via regular mail.

Anthony R. Zelle
ZELLE McDONOUGH, LLP
Four Longfellow Place, 35th Floor
Boston, MA 02114

Stephen P. Harten, Esq.
Ratcliffe Burke Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

/s/ Mark W. Dana, Esq.